GREEN v. CATES *et al., Appellants.*

| 73 | 115 |
|----|-----|
| 96 | 273 |
| 73 | 115 |
| 122 | 257 |
| 73 | 115 |
| 145 | 644 |

1. **Statute of Frauds**: TRUST: PAROL EVIDENCE. Parol evidence is not admissible to show that a deed absolute on its face was made upon an express trust.

2. ———. There can be no resulting trust where an express trust was intended, though the latter fails for any reason, as for example, because the deed was made in fraud of creditors.

3. ' **Equity** : FOLLOWING TRUST FUNDS. Mere failure to account for·trust funds will not authorize a decree divesting title to land out of the trustee and vesting it in the beneficiary. There must be proof that the funds were invested in the land.

*Appeal from Barry Circuit Court.*—HON. W. F. GEIGER, Judge.

REVERSED.

*George Hubbert* for appellant.

1.  That the legal title to the "Selvidge tract" was in James D. Selvidge when he and his wife conveyed it to Matilda Cates, there can be no question. Respondent's effort is to show that James D. held it in trust for his wife, and that she, consequently also the respondent as her heir, might be decreed the *cestui que trust*, not now, to be sure, as to that tract, but as to the "Cates tract" which was acquired by Matilda Cates from another source, and which, we submit, was not acquired by appellants with funds upon which equity could have fastened any trust for respondent or her ancestor.

2.  If, for argument's sake, we conceded that James D. Selvidge held the Selvidge tract in trust for his wife, the following considerations are fatal to respondent's case : (1) An express trust can be created only by writing, and none has been shown in this case as against Matilda Cates or appellants. Wag. Stat., 655, § 3 ; R. S. 1855, 807, § 3. (2) To raise a resulting or constructive trust there must be no room for doubt as to the facts relied on. *Forrester v. Scoville*, 51 Mo. 268 ; *Johnson v. Quarles*, 46 Mo. 423 ; *Ringo v. Richardson*, 53 Mo. 385. (3) And the greatest certainty of identity is necessary in tracing trust funds. Hill on Trusts, *522, (4 Am. Ed.) 815 ; *Buck v. Asbrook*, 59 Mo. 200. (4) But here there is certainty of the non-identity, for the Cates tract (over which this contest) was not purchased with the proceeds of sale of the Selvidge tract, (claimed to have been first chargeable with the trust). Dilworth bought the Cates tract at administration sale and paid no money. But the administrator accounted as if he had received the money, and then procured conveyance to his wife. So its own purchase price was the consideration for which the Cates tract passed to appellant, Delilah Cates ; and the conveyance was not void. *Mitchell v. McMullen*, 59 Mo. 252. Otherwise the title would yet be in the heirs of Ma-

tilda Cates, and there would be nothing in this action for respondent.

3. While it is a general rule that strangers have no concern with conveyances in fraud of creditors, in this case it is essential to respondent's case to show appellants' privity with the supposed original trustee, Mrs. Matilda Cates, and if the privity be assumed for one purpose, appellants may, just as she could have done, take the very common attitude of one in *pari delictu* with the orator in equity and say : (1) The conveyance of James D. Selvidge and Penelope Selvidge, the parents of the respondent, was neither in good faith nor supported by consideration. Absence of either of these elements renders a conveyance by an insolvent or embarrassed debtor fraudulent. Story Eq., §§ 353, 356, 359 ; *Reed v. Pelletier*, 28 Mo. 177. (2) And so it is if the property came by the wife and the conveyance be an attempted settlement upon her. *Potter v. McDowell*, 31 Mo. 62.

4. Respondent's ancestors were moved to their act of conveyance by the actual fraudulent intention to hinder the creditors of James D. Selvidge. Then : (1) Penelope C. Selvidge having freely and voluntarily joined therein, (without which, evinced by an officer's certificate thereof, the conceded conveyance to Mrs. Matilda Cates could not have been made,) she could not herself have been relieved of its consequences by equity. *Hamilton v. Scull*, 25 Mo. 167; *Steele v. Parsons*, 9 Mo. 813 ; *Fenton v. Ham*, 35 Mo. 412. (2) No more than would her husband's presence exempt her from punishment for a crime committed before him, but proven to have been done freely and of her own uncontrolled will. 1 Bishop Crim. Law, (3 Ed.) § 455. (3) And the fact of her coverture affords no exception to the rule. *The Manhattan Co. v. Evertson*, 6 Paige 457 ; *Wiswall v. Hall*, 3 Paige 313; *Den v. Johnson*, 3 Harr. (18 N. J. L.) 87 ; *Devorse v. Snider*, 60 Mo. 240.

5. A voluntary fraudulent conveyance is equally good against the grantor, his administrator and his heirs. Story

Eq., § 371; 1 Am. Lead. Cas., 45, and cases cited in note; *Ober v. Howard*, 11 Mo. 425; *Henderson v. Henderson*, 13 Mo. 151; *McLaughlin v. McLaughlin*, 16 Mo. 242; *Brown v. Finley*, 18 Mo. 375; *George v. Williamson*, 26 Mo. 190.

6. In casting about for a trust fund and for an initial point for the tracing of its conversion into the property in question, we cannot be unmindful that: (1) A trust can be fastened only upon a legal estate through its owner, and for that purpose equity cannot enlarge the estate to make it commensurate with the supposed trust. 2 Washburn Real Prop., *204; Co. Litt. 190 b, 1st Am. from 19th Lond. Ed., note 249, § .7; Hill on Trusts, *144. (2) Appellants never bought or owned the Selvidge tract. It was bought by Pierce; but the legal title is yet in the heirs of Matilda Cates, no administrator's deed having been made. *Speck v. Wohlien*, 22 Mo. 310.

*John W. Wellshear, Norman Gibbs* and *L. C. Krauthoff* for respondents.

1. James D. Selvidge never paid one cent for the "Selvidge tract;" he merely bought from Fellows a land warrant and agreed to pay $100 therefor; laid it upon that land and at once assigned his certificate of entry to Fellows to secure the payment of the purchase price, taking from Fellows a bond for deed, and failing to pay, transferred his bond to Bowman, who paid in full the purchase price, and thereupon Fellows deeded the land to Bowman. If the patent for said land was issued in the name of Jas. D. Selvidge, it at once inured to the sole benefit of Bowman.

2. Penelope Selvidge bought that tract from Bowman and paid him from the money she received from her father's estate, money that had never been reduced to possession by her husband; and Bowman undertook, by deed, to convey said land to her, and but for the ignorance and mistake of the scrivener, the full legal and equitable title would

have been vested in her.   Bowman, under his said sale; put her into possession of said land, and she certainly thereby acquired the equitable title; and an implied or resulting trust arises in her favor which equity will enforce. 4 Kent Com., 305, 306, 307; Tiffany & Bullard on Trusts, (1 Ed.) pp. 22, 23; *Loundsbury v. Purdy*, 18 N. Y. 515.

3.   The conveyance of the "Selvidge tract" by Penelope C. Selvidge and her husband to her mother, Matilda Oates, was not in fraud of the creditors of the husband, (James D. Selvidge,) for the tract was the wife's land, (at least in equity and they supposed legally,) and was conveyed to the wife's mother to hold for the benefit of the wife and her heir, the respondent Nancy M.   The act of the married woman in trying to secure a home for herself and her child, free from the improvidence and mismanagement of the husband, will not at this day be held by a court of equity to be a fraud.   The act of Penelope C. Selvidge in conveying the land to her mother in 1860, was but to secure to herself and her child what the statutes of this State now secure to every married woman, to-wit: the enjoyment by herself and her children of all she inherits from her father free from the improvidence or misfortunes of her husband.

4.   The entire administration of the estate of Matilda Oates by John F. Oates, from its inception to its completion, was a fraud upon the probate court in which it was had, and carried on by the said John F. Oates with the sole object of getting back into his own or his wife's name the title to the lands which he in this case admits he conveyed to his mother in fraud of his creditors; and the wrongs which that administration wrought can only be righted by the interposition of equity.   (1) If the only debt probated against the estate was a $5 note, it certainly was a great fraud in John F. Oates, acting in the double capacity of creditor and administrator, to procure it to be allowed as a $500 note.   (2) If it was really a $500 note, and executed as the nominal consideration for said fraudulent convey-

ance from John F. to Matilda Cates, still it was a fraud in him, while administrator of her estate and acting under oath to protect said estate, to cause that dishonest claim to be allowed ; and in either event, equity ought to interpose.

5. The act of John F. Cates in procuring Dilworth to convey his (John F. Cates') land to Delilah, his wife, (no consideration whatever passing from her therefor,) shows a continuance of his fraudulent intent to keep his property covered. The only consideration actually passing for the administrator's deed to Dilworth was the payment of costs of administration, and these costs were paid from the moneys paid by Pierce for the "Selvidge tract ;" and that the Selvidge tract was rightfully plaintiff's land was equally well known to both John F. and Delilah Cates, and hence they became chargeable as trustees. 4 Kent Com., 307 ; *Murray v. Ballou*, 1 Johns. Ch. 566 ; *Shepherd v. McEvers*, 4 Johns. Ch. 136.

6. John F. Cates being insolvent, and having with full knowledge sold plaintiff's land, and received the pay therefor, and having with the avails thereof (through the machinery of administration) purchased in the name of his wife the lands in controversy, the court below rightfully charged said lands with said trust, and vested the title thereto in plaintiff.

HENRY, J.—This is a proceeding in equity, by which plaintiffs seek to charge certain lands owned by defendant with the sum of $500, the proceeds of a tract of land sold by Jno. F. Cates, as administrator of the estate of Matilda Cates, which plaintiffs allege was conveyed by the father and mother of Nancy Green to said Matilda Cates in order to place it beyond the control of her father, the land having been purchased with money received by her mother from her father's estate, and Matilda Cates having paid nothing for the land. The land sought to be charged is not the land conveyed as above stated, but other lands owned by the defendant, Delilah Cates. The petition al-

leges that the lands sought to be charged were the property of John F. Cates, who, in order to hinder, delay and defraud his creditors, conveyed them to said Matilda Cates, his mother, who neither paid, nor was to pay, any consideration therefor, but executed to John F. her note for $5, and after her death, John F. procured for himself the appointment of administrator of her estate, and fraudulently obtained an allowance for $500, on said $5 note, and on his petition had an order of sale of the lands of the deceased, and sold the land so conveyed by Nancy Green's father and mother to one Pierce, and the other land to one Berry Dilworth, who conveyed them to Delilah Cates.

Without going into the details of the testimony, the facts established by the evidence are about as follows: James D. Selvidge, the father of Nancy Green, purchased a land warrant of Thomas Fellows for $100, for which he executed his note, and with it entered the west half of northeast quarter of section 35, township 24, range 28, in Barry county. The certificate of purchase was assigned by him to Fellows, who gave Selvidge his obligation to convey the land to him on payment of said note. Subsequently, on the eve of his departure with his wife to the state of Tennessee, Selvidge transferred to one Bowman all his right and interest in the land, and Bowman paid Fellows Selvidge's note, and Fellows made him a deed to the land. Selvidge and wife returned from Tennessee with some money received by Mrs. Selvidge from her father's estate, with which they purchased the land from Bowman, who resided in Christian county, and executed a deed to Mrs. Selvidge, intending to convey said tract, but by a mistake of the scrivener, it was misdescribed, and in ignorance of the law, was acknowledged before a justice of the peace for Christian county. A patent for the land from the United States was issued to said Selvidge in 1863.

In 1860, said Selvidge and wife executed a deed conveying the land entered by Selvidge to his mother, Matilda Cates, who paid no money, or other consideration for the

land, and there was abundant evidence tending to prove that the object of that conveyance was to defraud his creditors, and also other testimony to show that it was a contrivance to secure the land to Mrs. Selvidge, because her money purchased it. No trust is declared in the deed.

As to the other branch of the case, the evidence establishes the following facts: That John F. Cates was considerably involved in debt, and owned several tracts of land, and in order to hinder and delay his creditors, conveyed them to his mother, Matilda Cates, in June, 1861, expressing in the deed a consideration of $125, but no money was in fact paid, or to be paid. Matilda Cates executed her note to Jno. F. Cates for $500; at all events the probate court allowed him that sum against her estate, after her death, and whether it was originally for $5 or $500, is not to be tried in this case. The fraud alleged in procuring that allowance, we may say, was not proved.

In 1867, Jno. F. Cates administered on his mother's estate, and after obtaining the allowance in his favor, procured an order from the probate court of Barry county to sell lands of her estate to pay debts, his being the only debt. The regularity of the proceedings to procure the order of sale is not questioned, and under that order the Selvidge land was sold to one Pierce for $500, and the lands which had been conveyed by Jno. F. to his mother, were nominally sold to one Dilworth, who really purchased for John F. Cates, and afterward, by his direction, conveyed the land to Delilah Cates. Jno. F. and Delilah both knew all about the transaction between Selvidge and wife and Matilda Cates, and that the latter paid nothing for the land. On these facts the circuit court made a decree vesting the Cates tract of land in the respondent, Nancy Green.

Declarations of trust in land can only be manifested and proved by some writing signed by the party who is

1. STATUTE OF FRAUDS: trust: parol evidence. enabled to declare such trust. Wag. Stat., § 3, p. 655. The deed from Selvidge and wife to Matilda Cates was an absolute deed, and no trust

in favor of the grantors was expressed.   The alleged trust for the benefit of Mrs. Selvidge, if any, rested in parol, and is void under the statute.

There was no resulting trust in their favor.   There was an express trust, void because not in writing, and the 2. ——.            deed was made in fraud of Selvidge's creditors, whether the intent was to hinder, delay or defraud them, or being in debt, to secure the property to Mrs. Selvidge.   "A husband cannot, to the prejudice of his creditors, settle on his wife, without a valuable consideration, property that may have come to him by means of the marriage."   *Potter v. McDowell*, 31 Mo. 70.

But if the sum of $500 received by John F. Cates for the Selvidge tract of land could be regarded as a trust 3. EQUITY: follow-     fund, there was a total failure to show its in-ing trust funds.     vestment by Cates in the land decreed to Nancy Green.   On the contrary, not a dollar was paid by Cates for that land, but he simply credited his judgment against the estate of Matilda Cates with the amount of Dilworth's bid for the land.

This is a hard case.   The defendant has acted any other than the part of an uncle to an orphan niece, but there is not enough flexibility either in the principles of law or equity to warrant a court in giving the relief asked by plaintiff upon the facts proved.   We feel constrained to reverse the judgment.   All concur.