BENDER, *Appellant*, v. MATNEY *et al.*

Division Two, May 24, 1894.

1. **Appellate Practice**: EXCEPTIONS. No exception is available on appeal, except such as has been expressly passed on by the trial court.

2. ———: ———: REFEREE'S REPORT. Where the order of the court appointing a referee is not copied into the transcript of the record it will be presumed on appeal, nothing appearing to the contrary, that his omission to take and state an account between the parties was in compliance with the order of reference.

3. ———: ———: ———. The supreme court may in some cases modify the report of the referee as warranted by the evidence contained in the report.

4. **Judgment:** ESTOPPEL. A defendant, in an action on a judgment by its assignee, will not be heard to say that the plaintiff who was the attorney of the judgment creditor defrauded the latter in its purchase.

5. ———: ———. Where one as agent and attorney of a judgment debtor and with the latter's money purchases the judgment, he can not recover in an action on the judgment either against the judgment creditor or his codefendants.

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*H. S. Kelley* for appellant.

(1) The referee erred in refusing to take and state an account between the parties. The referee's findings of fact in an equity proceeding are not conclusive upon the trial or appellate court. *Heman v. Britton*, 88 Mo. 549: *Hardware Co. v. Wolter*, 91 Mo. 484; *Co. v. Bissell*, 41 Mo. App. 426; *Holt v. Simmons*, 16 Mo. App. 97; *Pendergast v. Eyerman*, 16 Mo. App. 387; *Bender v. Markle*, 37 Mo. App. 234. (2) Where the evidence is reported on which the conclusions are based, the court will determine the points in controversy upon the evidence reported. *Ely v. Ownby*, 59 Mo. 437; *Goetz v. Piel*, 26 Mo. App. 634; *Bender v. Markle*, 37 Mo. App. 234. (3) The evidence is reported and returned to the court with the report and findings of the referee, and we ask the court to determine the questions in the controversy. The court may accept the report of a referee as to the facts found, without accepting his inferences or conclusions of law. *Bank v. Miller*, 73 Mo. 187. (4) The record should show that the cause was considered by the court, and that the judgment was founded on the testimony reported by the referee. *Pomeroy v. Benton*, 77 Mo. 64; s. c., 6 Mo. App. 596. And when it is apparent on the face

of the report that the decision is erroneous, the judgment of the court confirming the report is erroneous. *Shore v. Coons*, 24 Mo. 556. (5) The referee erred in his conclusions of law and fact and in recommending that plaintiff could not recover.

*S. S. Brown* and *Vinton Pike* for respondents.

(1) The plaintiff can not recover for the reason that his title originated in fraud. (2) The plaintiff has no equitable interest and his legal title is vitiated by his fraud. *Loos v. Wilkinson*, 113 N. Y. 485; 21 N. E. Rep. 395. (3) King can sue upon the judgment, and, if the assignment to Bender is pleaded, reply the fraud. *Cravens v. Gillilan*, 73 Mo. 524–528. Or he can sue in equity to set aside the assignment. *Doss v. Dores*, 60 Mo. 300. Or sue Bender, Albin and Matney for damages. *Work v. McCoy*, 54 N. W. Rep. (Iowa) 140. (4) The foregoing is on the assumption that King was deceived and defrauded. If he was not, then the transaction was, in form, a purchase by Bender, acting as the agent of Albin; but in legal effect, a release to Albin, by King. Bender took the assignment for Albin, and paid for it with Albin's funds. He could acquire no interest in the judgment, adverse to his principal. *Bent v. Priest*, 86 Mo. 482; *Bartholomy v. Leach*, 7 Watts, 137; *Grace v. Andrews*, 59 Cal. 119; *Yerkes v. Crum*, 2 N. Dak. 72; 49 N. W. Rep. 422; *Hindman v. O'Connor*, 54 Ark. 627; *Cunningham v. Jones*, 37 Kan. 477; *Mason v. Bowman*, 62 Ill. 76; *Briggs v. Hodgdon*, 78 Me. 514; *Geisinger v. Beyl*, 50 N. W. Rep. 501. (5) An agent receiving profits can not set up against his principal the illegal character of the transaction, in which they were realized. *In pari delicto potior est conditio defendentis*, does not apply. *Pointer v. Smith*, 7 Heisk. (Tenn.)

Bender v. Matney.

137; *Brooks v. Martin,* 2 Wall. 70; *Railroad v. Durant,* 5 Otto, 576; Whart. on Agency and Agents, secs. 26, 250. Bender's alleged agency for King was not known to Albin and Matney; nor was the character of his agency for them known to King. *Atlee v. Fink,* 75 Mo. 100; *Schaffer v. Blair,* 149 U. S. 258. (6) If the assignment was a fraud upon King, and was procured by Bender for Albin, and paid for with his money, or money Bender acknowledged to be his, whatever was acquired by the assignment, belonged to Albin. He can not set up the fraud and keep the thing purchased for himself. *Larimore v. Tyler,* 88 Mo. 661–668; *McBlair v. Gibbs,* 17 How. 232, and cases cited; *Brooks v. Martin* and *Pointer v. Smith, supra.* (7) If the funds came to Bender's hands in such way that Albin could not make him account, yet Bender could account for them. If he held them in trust for Albin, under such circumstances, it rested upon his honor, whether he should account for them. *McBlair v. Gibbs, supra.* This obligation Bender performed by crediting them to Albin and paying them out on his account.

BURGESS, J.—This is an action by plaintiff as assignee of a judgment rendered in the circuit court of Buchanan county, in favor of William H. King against James A. Matney, guardian and curator of said King, and the defendants Albin and Gaston as sureties on his, Matney's, bond, as such guardian and curator. The penalty of the bond was $4,000; the damages being assessed at $3,387.39, for which judgment was rendered at the May term, 1874, of said court, bearing ten per cent. interest per annum from that date.

On the fifteenth day of September, 1875, there was paid on said judgment the sum of $800. On the twenty-fourth day of October, 1877, the lien of the judgment

was revived and continued in full force and an execution ordered to be issued for the amount of the judgment and costs. On the tenth day of December, 1877, the judgment was duly assigned upon the margin of the record of judgments by said King to the plaintiff Bender and one Albert Shaw. On the sixteenth day of February following, Albert Shaw assigned, in the same way, all of his interest in said judgment to the plaintiff Bender. On the twenty-seventh day of February, 1879, the judgment was revived by agreement between plaintiff Bender, Matney and Albin, and continued in full force. The order of revival recited that "the judgment had been revived on the twenty-fourth day of October, 1877, and continued in full force against said defendants, and said judgment being on the sixteenth day of February, 1878, for a valuable consideration, assigned to John C. Bender, is to be revived and continued in full force and effect," subject to the credit of $800, and that said plaintiff recover his costs.

The defendants answered separately but there is no material difference between the averments contained in the answers of Matney and Gaston. They allege that about the second day of February, 1878, Bender had in his possession and under his control certain funds and property of the defendant Albin, and it was agreed by and between said Albin and the other defendants on the one side, and the plaintiff on the other side, that the plaintiff should purchase the said judgment from said King at such sum as said King, knowing all the facts and circumstances, should consider should be the fair market value thereof, paying therefor out of the funds in his hands belonging to said Albin, to the full extent of such funds, and paying any balance, if there should be any, out of his own funds, and should cause execution to issue on said judgment, and the property claimed by Matney to be sold, and that Bender

would become the purchaser and would hold the property for the sole purpose of paying said Albin and Bender such sums as should be advanced out of their funds to pay said King the purchase price of said judgment, and that Bender would sell the property so purchased by him, and after paying the amount so paid for said judgment and a reasonable charge for his services, would pay to Matney any sum that might remain, and reconvey all said property remaining unsold, and would thereupon satisfy said judgment. That pursuant to said agreement, Bender purchased the judgment from King, as trustee, for $350, and caused execution to issue, and the property of Matney to be sold, and bought it in, giving a description of the property; and that he has sold a certain amount of said property, and received therefor $2,450, and paid the defendant Matney $500, and that he has conveyed other property, and he asks for an accounting.

The defendant Albin, in his separate answer, admits that the judgment sued on "was duly given and made," and that it was assigned to the plaintiff, and charged that long before the commencement of this suit said judgment was fully paid up and satisfied. He then stated that he was largely indebted and financially embarrassed, and that he was only surety in the bonds upon which the judgment was rendered, and that Bender proffered to assist him out of his difficulties, and undertook to manage and administer his estate, and that when Bender purchased and took an assignment of the judgment in suit, he purchased the same out of funds in his hands belonging to this defendant and did not pay therefor anything from his own funds; that he purchased said judgment as the agent and trustee of this defendant, instead of taking a satisfaction and cancellation thereof; that said purchase and transfer, while to said Bender in form, was in equity

and good conscience a discharge and release of said judgment; that Bender had the management and control of Albin's affairs, and the disposition of his property; that Bender has never rendered to defendant any account of his said trust or offered to settle or adjust the same; that Bender has adjusted all defendant's debts.

The plaintiff filed reply denying each and every allegation of Albin's and Gaston's answers, and denied all of Matney's answer, except as otherwise stated, viz: that he had purchased certain real estate and sold part of the same and used the money in paying taxes and other expenses, paid part of it to Matney, and expended the whole amount thereof for the benefit of Matney; and charged that plaintiff owed him $1,000 for one-half of a lot, and that he owed plaintiff $6,000 for time expended in and about Matney's business and for money paid and expended for his use and benefit, which sums plaintiff offered as a counterclaim against any sum that might be found against him on account of the matters set up in the answer, and asked judgment for any balance that might be found in his favor on account of the same.

The case was referred to W. B. Norris, referee, who heard the testimony and reported in substance:

"1.    That defendant Albin became a stockholder of an insurance company, and in payment of his stock he gave his two notes of $5,000 each and secured one of said notes by a deed of trust on real estate, which deed was prior in time to other judgments and liens; that Albin became embarrassed financially some time in the year 1875, and, being desirious of protecting his property against judgments, consulted the plaintiff to aid him in his purpose. A judgment had been rendered against Albin for the sum of $5,000 on one of the notes given to the insurance company, when only $300 was

then due thereon. The plan agreed upon by Bender and Albin was that Bender was to take Albin's place in the company, and that the property in the deed of trust should be sold under a foreclosure decree, and that Bender should buy it in and hold it for Albin's benefit, and Bender should give his own bankable note to the company and Albin should be released from all responsibility as a stockholder; that this plan was carried out and Bender bought Albin's property at a nominal sum. That this agreement was entered into with intent to hinder and delay the then creditors of Albin, among whom was Wm. Howard King, the then owner of the judgment sued on in this case.

"2. That in 1874 two judgments were rendered against the defendants in the Buchanan circuit court, in which Matney was principal and Albin and Gaston were sureties; one was in favor of Thomas Allen King and the other was in favor of Wm. H. King; these judgments were pressed for collection in the year 1877, and Matney sought the plaintiff Bender to assist *him* in protecting his property against his creditors, and with this end in view Bender began his plans of operation; and while Bender stood in the above confidential relations, and having more than sufficient assets in his hands of defendant Albin's to buy the H. W. King judgment at the sum for which he purchased it, an opportunity was presented Bender to purchase the said judgment, and with the knowledge of the judgment defendants, and, in pursuance of the fraudulent scheme aforesaid, he had the judgment assigned to him for the nominal sum of $350, and to one Shaw, who was at one time the guardian of W. H. King, and afterwards said Shaw assigned his part to plaintiff.

"3. Some time thereafter Bender had an execution issued on this W. H. King judgment and the property which he had bought in under the other judg-

ments (Albin's property) was sold under said execution for the purpose of perfecting Bender's title and protecting himself against his warranties which he had made in selling said property, as he. feared his title to said property was defective. This King judgment, after the aforesaid assignment to Bender, was by agreement of parties revived in the Buchanan circuit court, in the name of plaintiff Bender. After the plans of plaintiff had been successful the parties began to look after their respective interests in the property and began to divide the spoils.

"4. The referee, therefore, finds that plaintiff was a co-conspirator with the defendants in a fraudulent scheme against the creditors of the defendants, and that the assignment of the judgment sued on in this case was taken by him in pursuance of the aforesaid scheme, and as the agent of defendants, and that plaintiff had sufficient means of defendant Albin in his hands to use in the paying for said assignment to him."

"5. The referee's conclusions of law, from the above facts, were as follows:

"*First.* That plaintiff can not recover in this case, because, as agent of defendants, having purchased the judgment, he can not now retain any advantage over his principals.

"*Second.* Upon the pleadings in this case plaintiff can not recover, because the judgment, being paid as to the surety, was satisfied as to all the defendants.

"*Third.* All the parties were engaged in a fraudulent scheme against the creditors of defendants. Plaintiff's title having originated in fraud, the law will not lend its aid to plaintiff, nor will it assist defendants. The parties having placed themselves in unlawful relations, the law will leave them where it finds them.

"I therefore recommend that judgment be rendered in favor of defendants, on plaintiff's petition, and judgment for plaintiff on defendant Matney's cross bill."

The plaintiff moved to set aside and reject the report of the referee, and for judgment on his petition, on the ground that the finding was against the evidence; that the referee admitted illegal and incompetent evidence, and that his conclusions of law were erroneous. The exceptions to the report of the referee were overruled and plaintiff excepted. Judgment was rendered in favor of defendants. Plaintiff then filed his motion for a new trial, which, being overruled, he appealed to this court.

The important facts as disclosed by the record are about as follows: In the year 1870 the defendant, Albin, became a stockholder in the Home Stock Insurance Company, of St. Joseph, Missouri, and in payment of his stock executed to the company his two promissory notes in the sum of $5,000, each secured by deed of trust on unincumbered real estate. In 1875 Albin became financially embarrassed, when judgments were rendered against him, and being desirous of protecting his property against them and to prevent its being sacrificed, he arranged with the plaintiff, who was then a man of large means, to aid him in so doing. In the meantime judgment had been rendered against Albin for the full amount of one of the notes executed by him to the company, when the real amount due was only some $300. It was agreed between Albin and plaintiff that the plaintiff was to take his place in the company and that the property secured by the deed of trust should be sold under the foreclosure decree and that the plaintiff should buy it in at the sale and hold it for Albin's benefit, and in pursuance of this arrangement plaintiff gave his own note to the company. Albin was released as stockholder and plaintiff bought

in the property at the sheriff's sale for a nominal sum.

The collection of the King judgments being pressed in 1877, defendant Matney *also* arranged with the plaintiff to assist him in protecting his property against his creditors.   Under the arrangements between Albin and plaintiff, and Matney and plaintiff, a large amount of property belonging to Albin and Matney respectively, came into plaintiff's hands, and while the property was in his hands he and Shaw purchased the judgment in favor of Wm. H. King against Albin for the sum of $350.   Shaw, as before stated, subsequently assigned his interest in the judgment to plaintiff.

The evidence upon the part of the defense tended to show that plaintiff bought the King judgment with the funds of Albin, and that he held it for his use and benefit.   And while the evidence upon the part of the plaintiff, in the main, tended to show that he bought it with his own funds and on his own account, and that, if he did not, defendants were largely indebted to him for services as their attorney and agent; his evidence is very unsatisfactory, pregnant with incongruous and contradictory statements.

No exception was taken to the report of the referee upon the ground that he failed or refused to take and state an account between the parties, nor was any such question raised or called to the attention of the court in the motion for a new trial; and it can not now be raised for the first time in this court, but will be treated as having been waived.   The rule is that no exception is available on appeal, except such as has been expressly passed upon by the trial court.   Moreover, the order of the court appointing the referee has not been copied into the record and we can not tell what he was thereby required to do, and it must be taken for granted, nothing appearing to the contrary, that he complied with the order of the court referring the cause to him.

Bender v. Matney.

In a case of the character of the one in hand, this court is not bound to adopt or reject the report of the referee in its entirety, but may adopt it with such modifications as it may think warranted under the evidence as reported by him. *Hardware Company v. Wolter*, 91 Mo. 484; *Eli v. Ownby*, 59 Mo. 438; *O'Neill v. Capelle*, 62 Mo. 208; *Smith v. Paris*, 70 Mo. 616. In so far as the referee finds that the plaintiff was a co-conspirator in a fraudulent scheme against the creditors of the defendants, Matney and Albin, and that the assignment of the judgment sued on in this case, was taken by him in pursuance of said scheme, we do not think that finding sustained by the evidence. There is no pretense that the judgment itself was fraudulently obtained, and, even if plaintiff did not act in good faith with King, for whom he was acting as attorney at the time of the purchase of and the assignment of the judgment against Albin to him, it is no concern of Albin, as he was no party thereto, except so far as plaintiff was acting for him in regard to the matter; he is in no position to complain of the action of Bender in regard to the transaction which he now claims was for his benefit. He will not be heard to say that Bender's conduct towards his client was fraudulent, and at the same time avail himself of its benefits.

It is claimed by defendants that the order of the court reviving the King judgment in favor of Bender by and with the consent of Matney and Albin only, being without the consent or service of process on the defendant, Gaston, was void as to the latter, and, if void as to him, void as to all. What significance the revival of the judgment has, we are wholly at a loss to see, except in so far as it has a tendency to contradict the theory of Albin's defense, that it was bought by Bender for him with his means, and as his agent and attorney, and to show that it had not been satisfied at the time

of its revival, to wit, February 27, 1879.   The action is predicated on the judgment, and, whether it had been revived or not, if it had not been satisfied, and plaintiff owned it, he was entitled to judgment on it.

The referee found that Bender purchased the King judgment at the request of Albin while he occupied the confidential relation towards him of attorney and agent, and having more than sufficient assets in his hands with which to buy it, and which he did in fact pay for it. The contention of plaintiff is that this finding is not supported by the evidence.

The evidence abundantly shows that, at the time Bender purchased the King judgment, he was not only the agent and attorney of Albin, but that he consulted Albin about buying it before doing so, and that, at the time of the purchase, he had in his hands property of Albin, of a value largely in excess of the amount paid by him for the judgment.   Albin told him to by all means buy it.   Albin testified that about the last of March, 1875, Bender took charge of all of his property; that about the last of November, 1875, Bender showed him a statement of his expenditures; that about the last of March, 1876, he gave him an additional statement, and that the next report he made was the report of the King judgment, $350.

It is argued by plaintiff that the statement of Albin with respect to the statement made by plaintiff, in regard to the purchase of the King judgment, was evidently a mistake, as he admitted, on his cross-examination, that the last statement made to him by Bender was in March, 1876—while the King judgment was bought by plaintiff after that time.   It does not seem probable that Bender should have stated to Albin that he had bought the judgment and the amount that he paid for it when no such transaction had ever occurred. We must, therefore, conclude that the statement was

after the purchase by Bender of the judgment. We can not see how it could have been otherwise. The facts in proof, we think, come clearly within the rule announced by this court in *Green v. Cates*, 73 Mo. 115, and *Phillips v. Overfield*, 100 Mo. 466, that there must be proof that the money of Albin was invested by Bender in the purchase by him of the judgment and that in so doing he was acting for him in the capacity of agent and attorney.

We have not overlooked the fact that the revival of the judgment in favor of plaintiff was by and with the consent of Matney and Albin; but this, we take it, was not inconsistent with the relations of the parties prior to and at the time,—the manifest intention of which was simply for the purpose of preserving its lien upon Matney's property and to prevent its being sacrificed by his creditors. Moreover Bender testified as a witness in his own behalf "that, if he was entitled to the King judgment in full, he would not claim anything for his services," which seems utterly inconsistent with the idea that he ever believed that the King judgment belonged to him, and that he had a right to enforce it against the parties defendant therein. This finding was amply sustained by the evidence.

Our conclusion is that the plaintiff can not recover in this action, because, as agent and attorney of defendant Albin, he purchased for him, and with his money, the judgment sued on, and that, as he is not entitled to judgment against him, he is not against the other defendants. The judgment is affirmed. All of this division concur.